Cynthia COMER, Appellant,

v.

STATE of Indiana, Appellee.

No. 3–382A38.

Court of Appeals of Indiana, Third District.

Aug. 19, 1982.

John J. Gaydos, Elkhart, for appellant.

William J. Cohen, Deputy Pros. Atty., Elkhart, for appellee.

HOFFMAN, Presiding Judge.

Cynthia Comer brings this interlocutory appeal from an order of the Elkhart Superior Court finding her in contempt for refusing to answer certain questions before a grand jury.

The record reveals that on June 25, 1981, fire destroyed a building owned by Adventure R. V. Rentals, Inc. (Adventure). A Grand Jury was subsequently convened to investigate as the fire was apparently suspicious in nature. Targets of the investigation were Richard Dorman, the owner of Adventure, and James Payton. Cynthia Comer, who was employed by Adventure as a secretary, was summoned to testify.

When the Grand Jury convened on February 24, 1982, attorney Donald Wertheimer stated as follows:

"I'm entering my appearance on behalf of Adventure R. V. Rentals, Inc. and its agents and employees, specifically the agents and employees who are present today for testimony are Amy Wade, Nick Dercach, and Cindy Comer."

*Record* at 1.

Cynthia Comer was not called to testify, however, until February 26, 1982. During questioning by the deputy prosecuting attorney it was discovered that she had attended a meeting at attorney Wertheimer's office on the previous day at which several potential witnesses and Dorman were present. In response to the State's questions, Comer in part gave the following answers:

"Q And were you asked by Mr. Dorman to meet at Mr. Dorman's attorney's office in South Bend?

"A I did talk with the attorney yesterday.

"Q Where did this meeting take place?

"A In South Bend.

"Q At what office?

"A Don Wortheimer's [sic].

"Q Is Don Wortheimer [sic] your attorney?

"A Yes.

"Q And when did he become your attorney?

"A Monday, I think it was.

"Q And how did he happen to become your attorney?

"A When I got served the subpoena.

\* \* \* \* \* \*

"Q After you received the subpoena to appear at the Grand Jury, did you seek the services on your own of Don Wortheimer [sic] to be your attorney in this matter?

"A Yes. I felt I needed an attorney.

\* \* \* \* \* \*

"Q Now, who was present at the meeting yesterday at Mr. Wortheimer's [sic] office besides yourself?

"A Don and Dick and Amy and Steve.

"Q Now, in the State of Indiana anything that your attorney tells you is confidential, okay?

"A Yes.

"Q Anything that Mr. Wortheimer [sic] said to you, anything that was discussed yesterday is confidential unless you voluntarily, on your own waive that privilege and divulge what was discussed. Do you want to do that at this time?

"A No.

"Q Have you paid any money to Mr. Wortheimer [sic] to represent you?

"A No.

"Q Did you contact him yourself to represent you?

"A No.

"Q Were his services offerred [sic] to you on a voluntary basis? He volunteered to represent you?

"A Yes.

"Q You did not seek him out to represent you?

"A What do you mean?

"Q You did not look in the yellow pages or something to that effect under attorneys to have an attorney represent you; is that correct?

"A Correct.

"Q And you do not care, at this point, to discuss what was discussed in Mr. Wortheimer's [sic] office yesterday; is that correct?

"A Correct."

*Record* at 10–12.

Cynthia Comer's husband, Steven Comer, had also invoked the attorney-client privilege in response to similar questions about this meeting.

On Sunday, February 28, 1982, it appears that another meeting took place in attorney Wertheimer's office at which Cynthia Comer and other witnesses were present.

On the next day, March 1, 1982, the trial court issued the following ruling:

"Cindy Comer and Steven Comer having appeared before the Grand Jury and having refused to testify alleging attorney-client privilege and the Court having examined the transcript of both Cindy Comer and Steven Comer now finds that neither of said witnesses retained counsel or paid any money to counsel; that counsel volunteered his services on behalf of said witnesses and that a privileged communication cannot be created by attorney and client by such method without the client retaining the services of the attorney and specifically, for the purposes of defeating the presentation of testimony to the Grand Jury and the Court having further examined the docket sheet with respect to the appearance of counsel, now finds that no attorney-client relationship or contract was created; that no privilege exists and the witnesses are directed to answer the questions under oath subject to the pains and penalties of contempt of Court for refusal to do so."

*Record* at 14.

After the issuance of this ruling, Cynthia Comer immediately contacted her personal attorney, John Gaydos, who then appeared on her behalf in court.

Cynthia Comer was then recalled as a witness before the Grand Jury and responded to the State's questioning as follows:

1. IC 1971, 35 6 3 1 (Burns 1979 Repl.); *see also* IC 1971, 35 34 2 8 (Burns 1982 Supp.)

"Q Now, Cindy, you overheard, did you not, Jim and Richard conspiring to burn that building down, did you not?

"A I'd like to plead the Fifth Amendment."

*Record* at 21.

Thereafter she was granted immunity from prosecution for any statements she might make to the Grand Jury, unless such statements proved to be false or perjured.[1]

When questioning resumed, the following occurred:

"Q Cindy, during the course of several questions, it has been learned that a meeting took place this last Sunday at Don Wortheimer's [sic] office in South Bend, Indiana and that you were present at that meeting; is that correct?

"A Correct.

\* \* \* \* \* \*

"Q Would you tell this Grand Jury what was said and by whom at this meeting at the attorney's office this last Sunday?

"A I'm sorry, but that is the attorney's and client's privilege.

"Q You are refusing to answer that question on the basis that it's privileged information?

"A Right.

"Q Mr. Wortheimer [sic] was not your attorney at that time, isn't that correct?

"A That was not my understanding. That is incorrect. He was my attorney until this morning."

*Record* at 35–36.

After conducting a hearing *in camera* the trial court then issued the following ruling:

"The Court having now conducted further hearing with respect to certain questions propounded to the witness, Cindy Comer, for which she refused to answer

(effective September 1, 1982).

invoking the attorney-client privilege and which were certified to the Court on March 1, 1982 and the Court having examined the complete transcript of said proceedings as well as the proceedings certified pursuant to transcript on February 26, 1982, the Court now rules and reaffirms it's [sic] prior ruling that no attorney-client relationship existed between the witness, Cindy Comer and Donald Wortheimer [sic] and that, therefore, no attorney-client privilege exists which may be claimed by the witness. The Court further informs the witness in open court that the failure to answer questions certified constitute cause for contempt of court and that for contempt of court she can be incarcerated in the county security center until she shall purge herself or comply with the Court's order and the Court now inquires of the witness and instructs her to answer the questions propounded to her in the Grand Jury proceeding and the witness now, in open court, but in camera, now informs the Court that she refuses to answer the questions on the ground of attorney-client privilege. The Court having found that no such privilege exists and that the witness now refuses to answer the questions, the Court now finds the witness to be in willful contempt of the Court's order and that as and for that contempt, she shall be committed to the Elkhart County Security Center until such time as she shall purge herself from contempt and comply with the order to answer questions propounded to her with respect to the Grand Jury proceedings."

*Record* at 56–58.

Cynthia Comer then petitioned the trial court for rehearing and stay of the contempt order. Affidavits were filed by Wertheimer, Gaydos, and Cynthia Comer in support thereof. The court, however, denied both this petition for rehearing and a subsequent petition for writ of habeas corpus.

On March 5, 1982, this Court then granted appellant's petition for emergency order staying the execution of sentence for contempt pending this determination of her appeal.

IC 1971, 35–1–15–19 (Burns 1979 Repl.) reads in part:

"If a witness before the grand jury refuse [sic] to answer an interrogatory, the fact shall be communicated to the court in writing, in which writing the question to be answered shall be stated, together with the excuse for the refusal, if any be given by the person interrogated; and the court shall thereupon determine whether the witness is bound to answer[.]"

A diligent search of the record fails to indicate that any question asked of Cynthia Comer which she declined to answer was ever certified to the trial court.

 Furthermore, it appears that at no point during the proceedings did the trial court ever conduct a hearing [2] to determine whether an attorney-client relationship did in fact exist. The court's determination of this issue without holding such hearing effectively deprives appellant of due process of law. Indiana Constitution, art. 1, § 12.

 In its ruling on March 1, *supra*, the trial court did note that it referred to portions of the Grand Jury transcript and the docket sheet. While these documents may be relevant to the court's ultimate determination of this issue, a ruling based exclusively on such documents is fundamentally unfair. Appellant had the right to testify and call witnesses on her behalf. *See* 5 I.L.E. *Constitutional Law* § 219. The deprivation of this right renders the court's judgment procedurally defective. The judgment is therefore reversed.[3]

Reversed.

GARRARD and STATON, JJ., concur.

---

2. IC 1971, 35–34–2–7 (Burns 1982 Supp.) replaces IC 1971, 35–1–15–19 effective September 1, 1982. The new statute specifically requires the trial judge to hold a hearing under circumstances similar to the instant cause.

3. It should also be noted that the factors cited by the trial court in its March 1, 1982 ruling are not the exclusive indicia of an attorney-client relationship. The fact that appellant did not pay attorney Wertheimer is not controlling.

Appellant was entitled to a hearing at which all relevant facts and circumstances could be presented.

In addition, the present controversy might have been avoided had the prosecuting attorney simply asked Ms. Comer to narrate how she came to regard Wertheimer as her attorney. The use of leading questions only obscures the issue and compounds the prejudicial effect of the trial court's failure to hold an evidentiary hearing. For precisely that reason, leading questions are not favored in the law.